# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| UNM RAINFOREST INNOVATIONS | CIVIL ACTION NO. 6:20-CV-243-ADA |
| Plaintiff, | |
| v. | |
| GLOBALFOUNDRIES INC., | JURY TRIAL DEMANDED |
| GLOBALFOUNDRIES U.S. INC., and | |
| GLOBALFOUNDRIES U.S. 2 INC., | |
| Defendants. | |

Plaintiff's Responsive Claim Construction Brief

Table of Contents

I.   Introduction ............................................................................................................1

II.  Disputed Claim Terms ...........................................................................................2

     A.   Order of Claimed Steps...................................................................................2

     B.   "growing a heteroepitaxial layer on the seed area" ..................................4

     C.   "heteroepitaxial layer" ...................................................................................12

     D.   "selective growth mask layer" .....................................................................12

III. Conclusion ...............................................................................................................14

In accordance with the Court's Agreed Scheduling Order (Dkt. 24), Plaintiff UNM Rainforest Innovations ("UNM"), formerly known as STC.UNM, submits this Responsive Claim Construction Brief to rebut the arguments made in Defendants Opening Brief ("Defs.' Brief") regarding disputed claim terms in U.S. Patent No. 9,142,400 ("the '400 Patent").

I.    <u>Introduction</u>

Defendants cannot show that the steps of the claimed method ***must*** be performed in the order recited in the claim. While the recited order is one way to perform the method, it does not represent the exclusive order of steps. In attempting (unsuccessfully) to prove that the recited order is the only way to perform the claimed method, Defendants misread the claims, rewrite claim elements, and ignore the specification. Neither the plain language of the claims nor the specification's teachings necessitate the recited order.

Defendants also ask the Court to find as a matter of law that the claimed "seed area"—the construction of which Defendants do not challenge—somehow disappears as the claimed method is performed. Defendants jettison all common sense and try to impose an unsupported grammatical interpretation of the claim language in order to force an indefiniteness argument. In so doing, Defendants play fast and loose with intrinsic record and ignore the fact that their own expert had no indefiniteness concerns nine months ago when he provided testimony in support of other defendants' claim construction arguments. Claims cannot be held indefinite when an alternative interpretation is definite, especially where, as here, the interpretation offered by Defendants is tortured and unsupported by the intrinsic record. The Court should reject Defendants' novel and baseless argument.

Finally, Defendants offer scant support for their unnecessary additions to this Court's prior constructions of "heteroepitaxial layer" and "selective growth mask layer."

II.    Disputed Claim Terms

   A.    Order of Claimed Steps

Defendants argue that the steps of the claimed method must be performed in the order recited in the claim. Defendants attempt to impose an order based on a rewriting of claimed steps and unjustified rhetorical leaps. Defendants also overlook salient portions of the specification that undermine their arguments.

Defendants' argument suffers from three fundamental errors. First, Defendants misapprehend (or misstate) what happens in the second recited step, "Step 2," according to Defendants' convention. In their Brief at page 6, Defendants argue that Step 2 must occur before Step 3 because the "mask layer cannot be formed on the top surface (surface that forms a 'seed area') and the side surface of the pedestal unless a pedestal with top and side surfaces has been formed." Defendants gloss over the portion of the step involving formation of the seed area but later say that the "seed area" is formed in Step 2. Defs.' Br. at 7. As explained in UNM's Opening Brief at 11–12, the "seed area" is not formed in Step 2. Step 2 discloses characteristics of the "seed area" ultimately formed, including location (top surface) and linear surface dimension ranging from about 10 nm to about 100 nm, but the seed area is created in later steps.

The claim language confirms this. Step 2 discloses forming the pedestal on the substrate and gives certain required characteristics, *i.e.*, a top surface and a side surface. Step 3 discloses providing a selective growth mask layer on the pedestal's top and side surfaces. Step 4 discloses removing a portion of the selective growth mask layer to expose the seed area. These are actions performed by the user (or infringer) of the claimed method. These steps stand in contrast to the clause in Step 2 about the "top surface forming a seed area." The top surface does not perform an action. The top surface is a location on the pedestal. It is incapable of "forming," "providing," or "removing" as used in the claimed steps. Rather, the "forming" by the top surface relies on another

meaning of the word "forming," one that connotes the more figurative meaning of the word, like how a fence would "form" the boundary of a property. Adopting Defendants' view would require reading out the second instance of "top surface" in Step 2. Accordingly, to the extent that Defendants argue that the seed area is formed in Step 2—it is not—then Step 2 cannot occur before Step 3.

Second, Defendants incorrectly argue that Step 4 must occur before Step 5. Defs.' Br. at 7. To make this argument, Defendants impermissibly modify the claim language. Step 5 states "selectively etching back the exposed top surface of the pedestal." Defendants say that the top surface was "exposed" in the previous Step 4 and "the exposed top surface cannot be etched back in Step 5 unless the top surface of the pedestal was exposed in Step 4." *Id*. But Step 4 does not say expose the "top surface." Step 4 says "expose the seed area of the pedestal." While the seed area exists on the top surface, both the claims and the specification distinguish between "top surface" and "seed area." Contrary to Defendants' suggestion, the terms are not blindly interchangeable.

Because of the difference between the two terms, Step 4 need not necessarily occur before Step 5. For example, Step 5 could occur after formation of the pedestal in Step 2. At that point, the pedestal's top surface is exposed (because the selective growth mask layer has not been applied), and the pedestal may be etched back before the selective growth mask layer is applied. This etching back could be done, for example, to optimize the height or shape of the pedestal. *See, e.g.,* '400 Patent at 5:5-25 (discussing pedestal composition and dimensions). The specification's discussion of Figure 2 is illustrative. In Figure 2, the dimensions of the pedestal are modified using thermal oxidation to form the silicon dioxide selective growth mask layer. According to the specification, the "thermal oxidation process consumes the substrate material, so that the thicker the silicon dioxide layer, the smaller the resulting width dimension of the final pedestal 12." *Id*. at 6:59-63.

3

The specification adds, "Alternatively, the pedestal 12 can be patterned to the desired final dimension during the etching step; *followed by* forming a selective growth mask layer to delineate the seed area by a process that does not consume the silicon to reduce the dimensions of the pedestal 12." *Id*. at 6:66–7:3 (emphasis added). The specification thus describes a procedure during which the pedestal of a certain size or shape is patterned during an etching step *before* the selective growth mask layer is formed, which disproves Defendants' argument that Step 4 must occur before Step 5. Defendants do not—indeed, cannot—reconcile their position with this portion of the specification.

The portions of the specification cited by Defendants do not support their position. In particular, Defendants point to the specification's discussion that "a portion of the selective growth mask layer 14 is removed to expose at least the top surface." Defs.' Br. at 8. But, again, the specification does not say that the selective growth mask layer is removed to expose the "seed area." The specification states that the exposed top surface can be used as the seed area, or the exposed top surface can be etched back in order to create sidewall barriers. *See* '400 Patent at 5:51-67; 7:21-36.  In either case, there is a difference between the "top surface" and the "seed area." Indeed, the specification does not begin referring to a "seed area" until the final area of intended growth is prepared.

In short, the specification does not mandate that Step 4 occur before Step 5. In fact, the specification shows that Step 5 can occur before Step 4, as discussed above. Accordingly, the Court should reject Defendants' argument that the claimed steps must be performed in the order recited.

B.    "growing a heteroepitaxial layer on the seed area"

This term is not indefinite. Defendants argue that a heteroepitaxial layer cannot be grown on the "seed area" because the "seed area no longer exists because it was removed by the 'etching back' of Step 5." Defs.' Br. at 10. No reasonable person of ordinary skill in the art, reading the

4

claims in light of the specification, would understand that the "seed area"—an important aspect of the invention's novelty (*see* '400 Patent at 3:61-4:5)—would be "removed" by any step in the claimed process. Such a conclusion would be divorced from the technical understanding of the skilled artisan.

Defendants purport to walk through the claimed steps to show the disappearing "seed area." Their argument suffers from serious defects. First, Defendants argue that the seed area is formed in Step 2, but as discussed above, the second claimed step does not form the seed area. Rather, it describes the location and dimensions of the seed area that will be formed. Step 2 describes the formation of the pedestal, to be sure, but only provides that the seed area will be on the top surface and will have certain dimensions.[1]

Defendants argue that "the specification refers to the pedestal's top surface as shown in Figure 1A as a seed layer." Defs.' Br. at 11. The specification does not say that. Rather, the specification states that the pedestals "are comprised of any suitable material capable of acting as a seed layer for subsequent epitaxial growth." '400 Patent at 5:6-8. That the pedestals are made of a material that could be used as a seed layer does not mean that the top of the pedestal as shown in Figure 1A is the "seed area" disclosed in the claims.

Next, Defendants argue that Step 3 requires providing a mask layer that "covers both the top surface (*i.e.*, seed area) and the side surface of the pedestal." Defendants again take liberties with the claim language. Step 3 does not mention a "seed area." Defendants try to sneak in this element in order to support their view that the "seed area" was formed in the previous step, but the claimed step does not mention a seed area.

---

[1] Notably, Defendants must change the tense of the claim to "form[s]" in order to make their argument. Defs.' Br. at 11.

The following step, Step 4 according to Defendants, is "removing a portion of the selective growth mask layer to expose the seed area of the pedestal." Defendants contend that Figure 1C "depicts that the seed area **16** (*i.e.*, the same top surface of the pedestal formed in Step 2) has been exposed by removal of a portion of the mask layer." Defs.' Br. at 12. As a threshold point, Defendants erroneously state that element **16** refers to the "seed area." In truth, element 16 refers to the top surface of the pedestal. *See* '400 Patent at 5:38-40 ("Referring to FIG. 1C, a portion of the selective growth mask layer 14 is removed to expose at least the top surface 16 of the pedestal."). As discussed in the preceding section, Defendants cannot prove their point by mixing and matching claim terms.

Further, in Defendants' view this step removes the selective growth mask layer from the top of the pedestal, leaving everything else untouched. But as the specification contemplates:

> Various suitable methods can be employed to selectively remove the top portion of the selective growth mask layer. Examples include anisotropically etching to selectively remove the selective growth mask layer from the top surface of the pedestal; or formation of a non-conformal layer, such as by depositing and reflowing a layer followed by an etch back process. The etch back process can employ polishing, such as chemical mechanical polishing.

'400 Patent at 5:40-47. Some of these methods, such as chemical mechanical polishing, could remove more of the top surface of the pedestal than existed before application of the selective growth mask lawyer—much like sanding wood removes the top layers of the wood itself. Accordingly, Defendants go too far in arguing that the seed area exposed in this step is the "*same* top surface of the pedestal formed in Step 2." As the specification makes clear, that is not always the case.

Further, under Defendants' flawed view that the "seed area" was formed earlier in the process and is coextensive with the top surface, this step risks likewise removing the "seed area."

But the result of this step is that the "seed area" is exposed. The "seed area" cannot be exposed at the same time it is removed. This dooms Defendants' argument and their reasoning.

The next recited step is "selectively etching back the exposed top surface of the pedestal." Defendants argue that during this step, "the seed area that was formed in Step 2 and re-exposed in Step 4 is removed from the pedestal." Defs.' Br. at 12. Defendants provide an annotated version of Figure 1D to show "a new (lower) top surface" and a "red highlight" where the "original top surface (i.e., the seed area) used to exist." *Id.*



FIG. 1D

Defendants argue that a heteroepitaxial layer cannot be grown in the final recited step because that step requires growing the layer on the same "seed area" recited in the earlier steps and that "seed area" no longer exists because it was etched away. *Id* at 13.

A reasonable person of ordinary skill in the art would not distort the claimed steps in the way Defendants do, would not consider the red highlight to be the only "seed area," and would not understand the "seed area" to be destroyed by the preceding steps. *See* Plaintiff's Ex. 5 (Decl. of Prof. R. Harris) at ¶¶19–25. Instead, a person of ordinary skill in the art would consider the "seed area" to be on the top surface of the pedestal—even after a selective etch back— and having a linear surface dimension that ranges from about 10 nm to about 100 nm, as reflected in the second recited claim step. *Id.* at ¶¶20–23. A skilled artisan would not understand that the "seed area" exposed has suddenly disappeared because of the etch back. Rather, because the skilled artisan views the pedestal and heteroepitaxial layer in terms of their crystal properties, and inherently

7

knows that any atomic surface atop pedestal is suitable for epitaxial processing, then altering the height of the pedestal would still result in a "seed area" on the top surface. *Id.* [2]

Consider a bathtub filled 50% with water. The top surface of the water does not remain at the halfway mark if the tub is drained partially to 25% of its capacity. No reasonable person would say that the top surface of the water level is some plane a few inches above the partially drained tub.



Likewise, if water is added to the half-filled tub to make 75% full, no reasonable person would say that the top surface of the water is some plane that is now under a few inches of water. Yet, that is the non-sensical logic Defendants want this Court to apply. Such contrived and twisted reading of the claims is enough to reject an indefiniteness challenge. *See Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1376 (Fed. Cir. 2008) (finding non-sensical

---

[2] Claim 1 of the '400 Patent was asserted against Samsung and TSMC, neither of which argued that the claimed steps resulted in a disappearing "seed area" rendering the claim indefinite. And both Samsung and TSMC submitted expert declarations in support of their *Markman* arguments, but neither expert experienced any difficulty in understanding the claim. In fact, Samsung relied on the testimony of Dr. Jeffrey Bokor, the same expert Defendants tap here, to support its arguments. *See* Plaintiff's Ex. 6 (Dec. 12, 2019 Bokor Decl.). In his *Samsung* declaration, Dr. Bokor did not express any hint of confusion about how to perform the claimed method. In his threadbare declaration in this case, however, Dr. Bokor suddenly says, "it is my opinion that a POSITA would not understand how to perform the method of claim 1 as drafted." Dkt. 35-1 at 7. Dr. Bokor's declaration is conclusory and is devoid of any technical rigor. *See* Ex. 5 (Harris Decl.) at §¶24. He does not explain why or how a skilled artisan would read the claims to describe a disappearing seed area or how that understanding squares with the remainder of the specification. *Id.* His declaration simply parrots Defendants' argument. Thus, Dr. Bokor's newfound inability to understand claim 1 deserves no weight. And as mentioned in UNM's Opening Brief, Defendants had no trouble understanding how to perform the method of claim 1 when they filed their request for *inter partes* review.

reading of claims as "indicative of the ease in determining the appropriate meaning of each of the terms").

Defendants believe that the intrinsic record supports their fantasy, arguing that "the specification distinguishes the exposed top surface in Figure 1D and the top surface of the pedestal in 1A by referring to the former as "*a* seed area" and not "**the** seed area." Defs.' Br. at 13 (emphasis in original). They quote the following for support: "Following the selective etch back, an epitaxial layer is grown on the remaining portion of pedestal **12**. The exposed top surface of pedestal **12** provides a seed area for the epitaxial growth." *Id.* (quoting '400 Patent at 5:64-67). Based on this, Defendants contend that "the specification contemplates that ***another*** seed area was created when the pedestal 12 was etched back as a result of Step 5." *Id.* (emphasis in original). Defendants' reading of the record is demonstrably false.

First, Defendants omit the remainder of their cited portion of the specification. The full quote confirms that "***the*** seed area" of Figure 1D is the same seed area disclosed in the prior steps and that Defendants misplace reliance on the use of the indefinite article.

> Following the selective etch back, an epitaxial layer is grown on the remaining portion of pedestal **12**. The exposed top surface of pedestal **12** provides a seed area for the epitaxial growth. As described above, ***the seed area*** can have at least one dimension that is less than about 100 nm. Example configurations for ***the seed area*** include a rectangular area having with [sic] a width dimension ranging from about 10 nm to about 100 nm and a length dimension ranging from about 200 nm to about 2000 nm; or a circular area having a diameter ranging from, for example, about 10 nm to about 100 nm.

'400 Patent at 5:64-6:6 (emphasis added). In other words, the specification shows that "the seed area" of Figure 1C was not removed and still exists.

Second, Defendants' argument overlooks the specification's discussion of Figures 2E and 2F, shown below.



FIG. 2E                    FIG. 2F

Figure 2E shows the pedestal with an exposed top surface, which "can be used without further processing as a seed area for heteroepitaxial growth, if desired." '400 Patent at 7:21-23. "During epitaxy," the specification adds, "a single crystal semiconductor grows on *the seed area 26* that is shown exposed in FIG. 2E." *Id*. at 7:23-24 (emphasis added).

The specification then describes that "a further selective etch back of the seed material of pedestal **12** can be carried out to form the sidewall barriers **18** prior to the epitaxial growth, as illustrated in FIG. 2F." *Id*. at 7:25-27. "Heteroepitaxial growth is then carried out between the sidewall barriers **18**. Sidewall barriers **18** can block the propagation of defects, such as stacking faults and misfit dislocations, from the upper region of the heteroepitaxial layer." *Id*. at 7:31-33. Figure 2F delineates the seed area with the same label, **26**, as used in Figure 2E. More important, while the seed area in Figure 2F provides the additional benefit of the sidewall barriers that block propagation defects, the specification does not differentiate between the seed areas in the two figures for purposes of heteroepitaxial growth. To the contrary, in the remaining embodiments, heteroepitaxial growth occurs on "seed areas." *See, e.g.,* '400 Patent at 7:54-63 (describing growth on seed areas in Figure 5); *id.* at 8:4-15 (same as to Figures 6 and 7); *id.* at 8:41-43 ("…heteroepitaxial growth proceeds from the exposed semiconductor surface, or seed area, of pedestal **12**").

The foregoing is consistent with the plain and ordinary meaning of "seed area," which the Court construed to be "the area on which epitaxial growth *could occur*." (Emphasis added). As the

claims and specification confirm, epitaxial growth could occur on the top surface of the pedestal after the selective growth mask layer has been removed and/or after the top surface of the pedestal has been selectively etched back. Defendants do not challenge or seek modification of the Court's construction of "seed area," but the meaning of "seed area" strongly militates against crediting Defendants' contrived argument that the seed area disappears.

Defendants misleadingly argue that an amendment during prosecution rendered claim 1 indefinite. Defs.' Br. at 15. Defendants claim that the addition of Step 5, the etching back step, eliminates the seed area formed in Step 2. *Id*. This argument is nothing more than an alternate statement of Defendants' distorted view of the claims and the record. Nothing in the file history supports Defendants' argument. To the contrary, the examiner did not reject the claim as amended for being indefinite. If the addition of the claimed step resulted in the elimination of a seed area— the use of which will lead to reduced defects—and a violation of §112, the examiner would have made that objection during prosecution. *See Energizer Holdings Inc. v. ITC*, 435 F.3d 1366, 1370 (Fed. Cir. 2006) (rejecting indefiniteness challenge in part because the claims were not rejected or objected to on the ground of no antecedent basis). The addition of Step 5 to the claims does not eliminate the seed area formed in prior steps. Defendants' invocation of the file history is mere makeweight.

Defendants also argue that the Court cannot redraft claims to resolve indefiniteness. This is another straw man—one that is designed to shift impermissibly the burden of proving definiteness to UNM. Defendants cannot put the proverbial cart before the horse and point the finger at UNM. In any event, UNM's interpretation of the claim language—an interpretation uniformly held by prior defendants and Defendant in the IPR proceeding—accords with the plain language of claims as well as the specification's express teachings. Ex. 5 (Harris Decl.) at ¶¶19–

11

23, 25; *Trover Group, Inc. v. Dedicated Micros USA*, 2015 WL 1263358, at \*9 (E.D. Tex. Mar. 19, 2015) (Bryson, J., sitting by designation) (rejecting indefiniteness challenge because "the concept is a disarmingly simple one").

C.     "heteroepitaxial layer"

As explained in UNM's Opening Brief, the Court's prior construction of "heteroepitaxial layer" should be adopted. *See* UNM Opening Br. at 5–6. Defendants contend that the insertion of another instance of "crystalline" is necessary because both the underlying material and the layer grown on it must be crystalline. Defs.' Br. at 17. But the Court's construction of the term accounts for this mutuality of crystalline structure. The Court construed the term to be "a layer of **crystalline** material grown on the seed area, but of a different material than of the seed area, that is based off of the **crystalline** structure of the seed area." (Emphasis added.). The Court's construction thus makes clear that both the grown material and the underlying material must have crystalline structure. Furthermore, Defendants' proposed addition creates a redundancy. The additional "crystalline" that Defendants seek to add describes the structure of the grown material, as opposed to the underlying material, but the first instance of crystalline in the Court's construction—"a layer of crystalline material grown"—does precisely that. Defendants' proposed addition incorporates wholly unnecessary verbiage and should be rejected.

D.     "selective growth mask layer"

The Court's March 2020 construction of this term should be adopted without modification. Defendants do not argue that the prior construction is incorrect or inconsistent with the intrinsic record. Rather, Defendants contend that their proposed construction "will be more useful for the jury" than the Court's construction. The Court's construction of the term is sufficiently clear and understandable to a person of ordinary skill in the art as well as the jury, who will hear testimony from experts about infringement and invalidity.

12

Even more than with the preceding term, Defendants again want to encumber the Court's prior construction with unnecessary language. Defendants all but concede that their proposal adds nothing to the Court's construction: "Defendants' proposed modification simply makes explicit what is implicit in Plaintiff's construction." Defs.' Br. at 18. "Plaintiff's construction" is the same as the Court's construction, and discussed in UNM's Opening Brief, the Court's construction makes clear that the mask layer covers some areas of the underlying material and exposes other areas of the underlying material and that epitaxial growth occurs on the exposed areas. Contrary to Defendants' suggestion, this construction provides more than enough clarity and guidance for the jury as-is. The Court need not engage in unnecessary and superfluous claim construction exercise. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (noting that claim construction "is not an obligatory exercise in redundancy").

Further, as discussed in UNM's Opening Brief at 7-9, Defendants' proposed construction risks confusing the jury because of its potential to exclude from the scope of the claim certain embodiments, such as those in Figures 1E. In Figure 1E, growth of the heteroepitaxial layer occurs up and over the sidewall barriers. While this lateral overgrowth is not growth "on" the sidewall, a jury could misinterpret Defendants' surplusage to disqualify embodiments or structures like those in Figure 1E from the scope of the claim. That risk outweighs any alleged marginal benefit of Defendants' proposed construction.

Defendants cite the specification's disclosure that the selective growth mask layer can "prevent or reduce nucleation at the pedestal sidewalls, thereby isolating the nucleation during epitaxy to the top facet of the pedestal." Defs.' Br. at 19. But this portion of the specification counsels against Defendants' proposed construction, which appears to require complete prevention of nucleation. Indeed, "reduced" nucleation is missing from Defendants' proposed construction.

At the very least, a lay juror might be confused and think that all nucleation must be prevented—a view inconsistent with the specification.

Defendants also argue that a person of ordinary skill in the art would understand the dual purposes of the selective growth mask layer. But neither Defendants nor their expert argue that a skilled artisan would find the Court's construction unhelpful, confusing, or incomplete. As Defendants concede, the notions that undergird their construction are already present in the Court's construction.

Because the potential confusion of Defendants' additional language easily surpasses any purported utility to an expert or a juror, Defendants' proposed construction should be rejected, and the Court should adopt its prior construction in this case.

III.    Conclusion

Neither the claims nor the specification mandate that the claim steps be performed in the order recited, and Defendants cannot show otherwise. Moreover, the Court should summarily reject Defendants' illogical and strained contention that the claimed method results in *removal* of the "seed area." Defendants' position is contrary to a plain reading of the claims, the specification's guidance, and common sense. The Court should likewise reject Defendants' attempt to lard up the Court's prior constructions of "heteroepitaxial layer" and "selective growth mask layer" with unnecessary and potentially confusing additional language. In short, the Court need not deviate from the *status quo ante*.

Dated: September 25, 2020              Respectfully submitted,

                                       By:  /s/ *Charles L. Ainsworth*
                                            Charles L. Ainsworth (Texas 00783521)
                                            Robert Christopher Bunt (Texas 00787165)
                                            PARKER, BUNT & AINSWORTH, P.C.

100 East Ferguson, Suite 418
Tyler, Texas 75702
Tel: (903) 531-3535
charley@pbatyler.com
rcbunt@pbatyler.com

Michael W. Shore (Texas 18294915)
Alfonso G. Chan (Texas 24012408)
Samuel E. Joyner (Texas 24036865)
(*pro hac vice* to be submitted)
Corey M. Lipschutz (Texas 24099303)
SHORE CHAN DEPUMPO LLP
901 Main Street, Suite 3300
Dallas, Texas 75202
Tel: (214) 593-9110
Fax: (214) 593-9111
mshore@shorechan.com
achan@shorechan.com
sjoyner@shorechan.com
clipschutz@shorechan.com

Brian D. Melton (Texas 24010620)
John P. Lahad (Texas 24068095)
Alejandra C. Salinas (Texas 24102452)
Thomas V. DelRosario (Texas 24110645)
(*pro hac vice* to be submitted)
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
bmelton@susmangodfrey.com
jlahad@susmangodfrey.com
asalinas@susmangodfrey.com
tdelrosario@susmangodfrey.com

**COUNSEL FOR PLAINTIFF**

15

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 25, 2020 a true and correct copy of the foregoing was served to any and all counsel of record via CM/ECF.


/s/ *Charles L. Ainsworth*
Charles L. Ainsworth

16